IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV

2009 JAN 29 A 10: 18

CLERK Burton

| | | |
|---|---|---|
| ALBERTA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 107-106 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Alberta Johnson ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I. BACKGROUND

Based upon claims of disability dating back to June 18, 2002, Plaintiff applied for SSI payments on September 3, 2002. Tr. ("R."), pp. 60-67. The Social Security Administration denied her original claim, R. 37-38, and her request for reconsideration. R. 46, 48. Plaintiff

then requested a hearing before an Administrative Law Judge ("ALJ"). R. 54. Represented

by counsel, Plaintiff appeared and testified at a hearing on September 27, 2004.[1] R. 337-62.

The ALJ then issued an unfavorable decision dated April 27, 2005. R. 21-28.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. Claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. Claimant has diabetes mellitus and neuropathy impairments that are severe impairments based upon the requirements in the Regulations (20 CFR § 416.921).

3. Claimant's medically determinable impairments, either singly or in combination, do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

4. Despite the existence of medically determinable impairments, Claimant has the residual functional capacity to perform light work with restrictions against frequent fingering and climbing ladders. Therefore, Claimant is not prevented from performing her past relevant work as a private housekeeper. (20 C.F.R. § 416.927).

5. In the alternative, although the claimant's exertional and non-exertional limitations do not allow her to perform the full range of light and sedentary work, using Medical-Vocational Rules 201.27 and 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a cashier II, surveillance system monitor, receptionist, and telemarketer, all numbering in the thousands to millions in the regional and national economies.

R. 22-27. Thus, the ALJ concluded that Plaintiff "was not under a 'disability' as defined in

the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e)

and 416.920(e))." R. 27.

When the AC denied Plaintiff's request for review, the Commissioner's decision was

---

[1] A vocational expert ("VE") also testified at the hearing. R. 362-68.

"final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that the ALJ erred in finding that Plaintiff's impairments did not meet or medically equal the Listings. (Doc. no. 8). Plaintiff also argues that the ALJ erred in her findings concerning Plaintiff's residual functional capacity ("RFC"). (Id.). To this end, Plaintiff asserts that the ALJ erred in rejecting the opinions of her treating physicians as not credible without giving good cause, erred in rejecting Plaintiff's subjective complaints of pain as not credible in contravention of the pain standard, and erred in finding that Plaintiff could either return to her past relevant work as a housekeeper, or make a vocational adjustment to other work. (Id.).

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d

1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to him conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

4

## III. DISCUSSION

Plaintiff argues that the ALJ erred in not finding that she was disabled under the Listings as a result of the combination of her impairments. (Pl.'s Br., pp. 12-14). Plaintiff challenges the ALJ's handling of Dr. Scott's and Dr. Wiley's opinions. (Id.). Dr. Scott and Dr. Wiley are both in the same practice and are Plaintiff's treating physicians. In support of Plaintiff argument, Plaintiff states:

> The ALJ mischaracterized the Claimant's symptoms, parsing medical reports to excerpt only certain facts while ignoring others. A complete review of the medical records reveals that the Claimant has been consistently diagnosed with not only diabetes mellitus, but also with peripheral neuropathy and diabetic neuropathy with autonomic dysfunction. She has had repeated episodes of syncope and/or dizziness accompanied with headache and lightheadedness, treated in the Emergency Room. She has regularly reported foot pain, tingling, and "jumping."

(Id. at 13). As the determination of the Listing issue relies on the Court's determination of the remaining issues raised by Plaintiff – concerning the ALJ's findings regarding Plaintiff's RFC – the Court will focus its analysis on the determination of the RFC issue first. Plaintiff complains that:

> The ALJ substituted her judgment for the medical expert's and concluded that the claimant was capable of working. She parsed the record to extract the pieces of evidence that supported her finding, selecting bits of medical evidence to characterize as credible, other bits – from the same provider at times – to ignore. The reasons given for rejecting one treating source, Dr. Wiley, were not reasonable. Other medical opinions simply weren't mentioned.

(Id. at 15). Plaintiff sums up her argument by stating that the ALJ "did not follow the law, nor are her findings supported by the facts, and as a result, her finding of not disabled is not supported by substantial evidence and cannot stand on review." (Id.).

5

On the other hand, the Commissioner argues that Dr. Wiley's opinion was not entitled to significant weight because it conflicts with Dr. Scott's opinion of lesser limitations, and is unsupported by the practice's treatment notes and the objective medical records. (Comm'r Br., p. 17). Concerning Dr. Scott's finding that Plaintiff would be absent from work mor than three times a month, the Commissioner argues that the ALJ rejected that portion of Dr. Scott's opinion for the same reasons that the ALJ rejected Dr. Wiley's opinion. (Id. at 18). The Commissioner notes that the ALJ stated:

> Plaintiff was treated at Family Care Group approximately once a month. The majority of her visits to the practice were for regular diabetic follow-up care; Plaintiff was seen on urgent care matters requiring more frequent follow-up on only two occasions. This is consistent with the overall record, which indicates that Plaintiff received regular diabetic follow-up care on roughly a monthly basis, punctuated by only occasional worsening of her condition. Neither Dr. Scott nor Dr. Wiley cited any objective medical evidence in support of their opinions that Plaintiff would miss three or more days of work per month. . . . Accordingly, the ALJ properly rejected that portion of Dr. Wiley's opinion, and by implication, the corresponding part of Dr. Scott's. There is no error.

(Id.). According to the Commissioner, "Neither Dr. Scott nor Dr. Wiley cited any objective medical evidence in support of their opinions that Plaintiff would miss three or more days of work per month." (Id.). Therefore, the Commissioner maintains, "[T]he ALJ properly rejected that portion of Dr. Wiley's opinion, and by implication, the corresponding part of Dr. Scott's." (Id.). Concerning the ALJ's assessment of the credibility of Plaintiff's subjective complaints, the Commissioner concedes that the ALJ miscounted the number of Plaintiff's reports of pain to her various medical providers. (Id. at 19). However, the Commissioner contends this error is harmless because the ALJ properly relied on several other factors relevant to the evaluation of credibility. (Id.).

6

Finally, concerning the ALJ's determination that Plaintiff could perform work existing in substantial numbers in the national economy, the Commissioner also concedes that the ALJ's opinion is incorrect in stating, "The vocational expert testified that . . . the claimant could return to her past relevant work as a private housekeeper." (Id. at 21). The Commissioner agrees with Plaintiff that substantial evidence does not support the ALJ's findings at Step 4. (Id.). However, the Commissioner contends that this too is harmless error, because the ALJ moved on to the next step in the sequential analysis, properly relying on the VE's testimony as to Plaintiff's ability to perform other work to find her not disabled. (Id.).

The Court turns to Plaintiff's argument that the ALJ completely rejected the opinion of Dr. Wiley, one of Plaintiff's treating physicians. In discounting Dr. Wiley's opinion, Plaintiff notes that the ALJ claimed that she "relied heavily" on the opinion of Dr. Scott, another of Plaintiff's treating physicians. R. 24, 25. However, Plaintiff argues that the ALJ ignored the portions of Dr. Scott's opinion that were consistent with the findings of Dr. Wiley.[2] For example, the ALJ ignored Dr. Scott's finding that Plaintiff would be absent from work more than three times a month due to her impairments or treatments. The ALJ also

_____

[2]Dr. Scott's opinion provided that Plaintiff would be able to lift and carry twenty pounds occasionally and ten pounds frequently, sit without limit and stand or walk for about six hours out of an eight-hour day. R. 233. He believed Plaintiff could sit for half an hour or stand for fifteen minutes before needing to change position. R. 233-34. He further opined that Plaintiff would not need to lie down during her work shift. R. 234. Dr. Scott stated that Plaintiff could only occasionally stoop or climb stairs, and that she should never climb ladders. R. 234. Plaintiff's peripheral neuropathy affected her fingering and feeling. R. 234. Plaintiff should avoid concentrated exposure to environmental hazards such as extreme cold and heat. R. 235. Finally, Dr. Scott concluded that Plaintiff would be absent from work more than three times a month due to her impairments or treatment. R. 235.

ignored the portions of Dr. Scott's opinion wherein he states that Plaintiff's feeling capacities are limited.[3] In rejecting these portions of Dr. Scott's opinion, Plaintiff argues that the ALJ did not articulate her reason for doing so. In essence, the Commissioner concedes this point by stating, "[T]he ALJ properly rejected that portion of Dr. Wiley's opinion, **and by implication, the corresponding part of Dr. Scott's**." (Doc. no. 9, p. 18) (emphasis added).

It is well-established that in the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). In this case, however, the argument about treating physicians actually goes to a more basic premise concerning the duty of the Commissioner to consider the entire record. As initially noted in Part II, *supra*, a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter, 791 F.2d at 1548. "It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." Id.; see also Martin v. Heckler, 748 F.2d 1027, 1033 (11th Cir. 1984) (rejecting misuse of one set of positive test results, to the exclusion of all other evidence of record, to find claimant not disabled when the ignored evidence suggested other severe impairments).

Here, the ALJ reviewed the treatment records of Dr. Scott and Dr. Wiley. The ALJ notes:

> The record contains two medical opinions, one from Dr. Wiley dated

---

[3] The Commissioner concludes that "any error on this issue is harmless" because none of the four jobs identified by the VE require functional capacities for feeling. (Doc. no. 9, pp. 17, 22).

September 24, 2004, and one from Dr. Wiley's associate, Dr. Scott, dated November 24, 2003. Dr. Wiley['s] opinion was submitted after the hearing. . . . These assessments of the claimant have vast differences, with no explanation. Dr. Wilely rates the claimant at near invalidism frequently experiencing pain to such a degree that it would interfere with her ability to concentrate and maintain attention needed to perform even simple work tasks. Dr. Wiley also notes that the claimant would miss more than four workdays per month due to her limitations and treatment. Notably, he does not limit the claimant's fingering capacity and he states that the claimant does not need to elevate her legs while sitting. Dr. Scott, however, limits her fingering due to her peripheral neuropathy, but opines that she is capable of light work activity, full-time. The vast differences in the two opinions would lead one to think two different people were being assessed. Dr. Wiley's extremely limiting assessment is simply not supported by his own treatment notes or those of other treating sources, including Dr. Thompson.

R. 24.

In making her conclusions, the ALJ emphasized the purported differences in opinions and chose to ignore evidence that did not support her conclusion with respect to Dr. Scott's opinion – the opinion on which she relied "heavily." For example, the ALJ determined that Dr. Wiley's assessment of Plaintiff was very limiting and not supported by the record. The ALJ based this assessment on the fact that Dr. Wiley opined that Plaintiff would miss more than four workdays per month due to her limitations and treatment, as well as noted that Plaintiff frequently experienced pain to such a degree that it would interfere with her ability to concentrate and maintain attention needed to perform even simple work tasks. Although the ALJ noted that Dr. Scott opined that Plaintiff had a limitation on fingering due to her peripheral neuropathy she failed to mention that Dr. Scott opined that Plaintiff's impairments or treatment would cause her to absent from work more than three times a month. R. 235. The ALJ also failed to mention that Dr. Scott's opinion also reflected other limitations, for example, Plaintiff's feeling limitation. R. 234.

9

The Commissioner contends that because ALJ properly rejected Dr. Wiley's opinion, she, by implication, properly rejected the corresponding part of Dr. Scott's opinion in which he stated Plaintiff would miss work more than three times a month.[4]  (Doc. no. 9, p. 18). Notwithstanding the Commissioner's attempt to fully discuss the findings of the treating physicians, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner.  Martin, 748 F.2d at 1031 (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").  The Court is mindful of the difficulties of evaluating a claimant's impairments and weighing the competing medical opinions that often appear in an administrative record.  Nonetheless, the law requires the Commissioner to provide a well-reasoned, well-articulated decision.  Without such an analysis, the federal courts are unable to provide claimants with sound, meaningful review of the administrative decision.  The Court cannot second-guess what the ALJ may have been thinking or may have intended to consider.  In this instance the ALJ's decision does not adequately consider the entire record.  Therefore, this case should be remanded for full consideration of the entirety of the physicians' opinions in the administrative record.

Also complicating the issue of whether the ALJ adequately considered the entire record is her assessment of Plaintiff's subjective complaints of pain.  The ALJ discounted Plaintiff's disabling complaints of pain, based in part on Plaintiff's failure to keep up with

---

[4]The Commissioner states that Drs. Wiley's and Scott's opinions did not offer reasons to support their claims that Plaintiff had the limitations they claimed; however, both identify that the reason for their prognosis concerning Plaintiff's limitations was that Plaintiff has severe diabetes mellitus and neuropathy. R. 234, 239.

prescribed treatment. R. 18. The ALJ also found that Plaintiff's complaints were not credible, presumably basing this finding on her observation that there were only two pain complaints in the record.[5] Plaintiff's "Daily Functioning Questionnaire dated October 21, 2002." R. 25. Specifically, the ALJ noted:

> [T]he claimant performs household duties such as laundry, vacuuming, and cooking. Additionally, the claimant reported that she participates in activities including, church, walking, shopping for food and clothing, and that she can walk for 30 minutes at a time and drive as needed, traveling some 45 minutes to doctor appointments. The claimant also noted that "once I take my medication, I feel OK"; yet, she also reports that she has medication side effects of tiredness, drowsiness, upset stomach and low sugar. . . . The record also contains multiple notations of noncompliance, including not controlling her diet, eating at all you can eat buffets, drinking coke, and not using her medications as prescribed as evidenced by bringing medications to her treating physicians that should have been used up months before.

R. 25.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). Under the Eleventh Circuit's pain standard, Plaintiff must

---

[5]The ALJ states:

Exhibits 1F and 2F contain treatment notes from the Medical College of Georgia Clinic, which show the claimant's pain assessments, on a pain scale of 0 to 10, at "0" with the exception of a treatment note dated June 11, 2003, when she was noted as having pain at "8" suspected of being related to a new prescription. The only other pain complaint of record, is noted when the claimant began complaining of chest pain in October 2003. Moreover, Dr. Wiley's office notes at Exhibit 3F do not show any pain complaints, and all her physical examinations are noted as normal with the exception of notes dated October 28, 2003, and January 20, 2004, indicating some chest tenderness, which was subsequently controlled with Klonopin.

R. 25

11

show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (per curiam). Furthermore, pursuant to 20 C.F.R. § 404.1530, a claimant may be denied disability benefits if the Commissioner finds that the claimant unreasonably failed to follow prescribed treatment and that if the claimant had followed the treatment, his ability to work would have been restored.[6] Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988). This finding must be supported by substantial evidence. Id.

Concerning the ALJ's findings on Plaintiff's subjective claims of pain, although the

---

[6] 20 C.F.R. § 404.1530(a)-(b) provides:

(a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

ALJ claims that there were only two references to pain in the record, Plaintiff argues that there are at least seven instances were Plaintiff had complained of pain in the record. (Pl.'s Br., p. 17). Indeed, even the Commissioner concedes that the ALJ erred by concluding that there were only two instances in the record where Plaintiff mentioned of pain. (Comm'r Br., p. 19). The Commissioner's attempts to remedy the ALJ's error and contends that although the ALJ miscounted the number of Plaintiff's reports of pain to her various medical providers, this error is harmless because the ALJ properly relied on several other factors relevant to the evaluation of credibility. (Id.)

In reviewing the ALJ's opinion, the Court notes that it appears that the ALJ has chosen the evidence that bolstered her conclusion while ignoring evidence that did not support her conclusion. For example, the ALJ notes that Plaintiff states in her Questionnaire "[O]nce I take my medication, I feel OK." R. 25. However, a review of the Questionnaire shows that Plaintiff, in three different sections, wrote that sometimes the pain in her hands and feet were so intense that she could not get out of bed, or could not lift anything. R. 97. The ALJ also comments, "There are no notations of the claimant having difficulty walking, swelling, muscle weakness, fatigue or any difficulty with concentrating and thinking." R. 25. However, on October 6, 2003, when Plaintiff was admitted to the hospital, she complained of chest pains, radiation, nausea, vomiting, diaphoresis, lightheadedness. R. 150. While in the hospital, Plaintiff was found lying on the floor, and the records indicate that his was probably because she passed out. R. 151. When she was released from the hospital, on October 13, 2003, though her symptoms had improved, the recommendation was made for Plaintiff to walk with a rolling walker at home. R. 152. As pointed out by Plaintiff, the

13

record is replete with entries where Plaintiff claimed she was in pain. R. 73, 97, 107, 119, 131, 149,157, 173, 205, 288, 299.[7]   Although the Court is in no way making a final determination as to Plaintiff's allegations of pain, it is clear that the ALJ's opinion is not bases on substantial evidence.

Therefore, this case should be remanded. On remand, the ALJ's decision must follow the appropriate regulations concerning the weight given to the relevant evidence and medical opinions, and the decision must follow the Holt standard outlined above concerning Plaintiff's subjective complaints of pain.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 29th day of January, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7] These entries include medical records as well as forms completed by Plaintiff. Interestingly, at least seven of the entries reflect medical records in which Plaintiff's pain was at a seven or higher on a scale where zero is no pain, and ten is the worst pain.